IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES E. BOWELL,

          Plaintiff,                  No. 2:10-cv-0397 JAM DAD (PC)

    vs.

CALIFORNIA DEPARTMENT OF
CORRECTIONS, et al.,

          Defendants.           FINDINGS AND RECOMMENDATIONS
_____/

        Plaintiff is a state prisoner proceeding pro se in this civil rights action for relief pursuant to 42 U.S.C. § 1983.  This action is proceeding on claims raised in plaintiff's amended complaint, filed June 14, 2010.  (Doc. No. 16.)  Therein plaintiff presents the following claims: (1) that on September 15, 2009, defendants Fackrell, Goldy, Morris, Leone, and Head violated plaintiff's Eighth Amendment rights by use of excessive force (Doc. No. 16 at 6-7); (2) that defendants Gutierrez, Light, Morris and Goldy violated plaintiff's rights under the Eighth Amendment by failing to protect him from harm threatened by defendant Fackrell (id. at 7-8); and (3) that defendants Gamberg, Gutierrez, and McGuire violated plaintiff's First Amendment

/////

/////

/////

1

1   right to access the courts (id. at 10-11).[1]  This matter is before the court on defendants' motion

2   for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff opposes the motion.[2]

3                    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

4               Summary judgment is appropriate when it is demonstrated that there exists "no

5   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6   matter of law."  Fed. R. Civ. P. 56(c).

7               Under summary judgment practice, the moving party

8               always bears the initial responsibility of informing the district court
                of the basis for its motion, and identifying those portions of "the
9               pleadings, depositions, answers to interrogatories, and admissions
                on file, together with the affidavits, if any," which it believes
10              demonstrate the absence of a genuine issue of material fact.

11  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

12  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

13  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

14  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

15  after adequate time for discovery and upon motion, against a party who fails to make a showing

16  sufficient to establish the existence of an element essential to that party's case, and on which that

17  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

18  concerning an essential element of the nonmoving party's case necessarily renders all other facts

19  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

20  /////

21

22      [1]  The court has separately recommended dismissal of plaintiff's claim that on  December
        3, 2009, defendant T. Smith subjected plaintiff to the excessive use of force and threatened to have
23      him murdered.  See Findings and Recommendations filed December 13, 2011 (Doc. No. 63).
        Defendant Smith also seeks summary judgment by the motion at bar.  In view of the December 13,
24      2011 findings and recommendations, the court will not address defendant Smith's motion for
        summary judgment herein.

25      [2]  To the extent that plaintiff's opposition might be construed as a request pursuant to Federal
        Rule of Civil Procedure 56(d) to postpone consideration of defendants' motion, the request should
26      be denied due to plaintiff's failure to make a sufficient showing to warrant such a postponement.

1   whatever is before the district court demonstrates that the standard for entry of summary

2   judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

3        If the moving party meets its initial responsibility, the burden then shifts to the

4   opposing party to establish that a genuine issue as to any material fact actually does exist. See

5   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

6   establish the existence of this factual dispute, the opposing party may not rely upon the

7   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

8   form of affidavits, and/or admissible discovery material, in support of its contention that the

9   dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

10  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

11  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

12  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

13  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

14  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

15  1436 (9th Cir. 1987).

16       In the endeavor to establish the existence of a factual dispute, the opposing party

17  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

18  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

19  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary

20  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

21  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

22  committee's note on 1963 amendments).

23       In resolving the summary judgment motion, the court examines the pleadings,

24  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

25  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,

26  477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

1  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

2  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

3  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

4  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

5  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

6  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

7  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

8  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

9          On November 3, 2010, the court advised plaintiff of the requirements for

10  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

11  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409

12  (9th Cir. 1988).

13                              ANALYSIS

14  I.  Facts

15          The following facts are undisputed.  At all times relevant to this action plaintiff

16  was an inmate confined at High Desert State Prison (High Desert), and defendants Fackrell,

17  Goldy, Morris, Leone, Head Gutierrez, Light, Gamberg, and McGuire were employees of the

18  California Department of Corrections and Rehabilitation (CDCR) working at High Desert.

19          On September 15, 2009, plaintiff was being escorted by defendants Morris and

20  Goldy to the facility B program office at High Desert.  (Opp'n. (Doc. No. 59), Ex. A - Decl. of

21  Witness Inmate Moreno filed August 24, 2011 (Moreno Decl.); Mot. for Summ. J. (Doc. No. 52),

22  Exs. A and B to Declaration of Mendoza filed August 5, 2011 (Mendoza Decl.)).  During the

23  escort, plaintiff attempted to sit down.  (Moreno Decl.;  Mendoza Decl., Ex. A.)  An altercation

24  ensued involving plaintiff and defendants Morris, Goldy, Mendoza, Fackrell.  (Id.)  At some

25  point, defendants Leone, Head and Gutierrez all arrived at the scene of the altercation.  (Mendoza

26  Decl., Ex. A.)

1       As a result of the altercation, plaintiff was charged with a disciplinary violation of

2   battery on a peace officer.  (Mendoza Decl., Ex. I.)  Plaintiff was found guilty of the charges

3   following a disciplinary hearing that he refused to attend.  (Mendoza Decl., Ex. K.)

4       Just before the altercation, defendant Gamberg gave an envelope containing some

5   of plaintiff's legal documents to defendant Morris.  (Decl. of Matthew Ross Wilson (Wilson

6   Decl.) in Supp. of Mot. for Summ. J. (Doc. No. 53), Ex. A - Dep. of James Bowell (Bowell Dep.)

7   at 57:15-18.)  Defendant Morris returned the documents to plaintiff, who then gave the

8   documents to defendant Gutierrez.  (Bowell Dep. at 58:8-10.)  Defendant Gutierrez placed the

9   documents on the floor of the dayroom.  (Id. at 58:17-21.)  The documents were not in plaintiff's

10  property when it was returned to him by prison officials six weeks later.  (Id. at 77:16-24.)

11  Plaintiff did not receive the documents back until he left High Desert approximately six weeks

12  later.  (Id. at 77:24.)

13      Several facts relevant to plaintiff's claims concerning the altercation with the

14  defendants and their alleged failure to protect plaintiff from the alleged threat by defendant

15  Fackrell are in dispute.  In support of their motion for summary judgment, defendants present

16  evidence that plaintiff attempted to pull defendant Goldy to the ground with him when plaintiff

17  attempted to sit down.  (Mendoza Decl. , Exs. A and B.)  Defendant Morris ordered plaintiff to

18  let go of defendant Goldy's arm, and defendants Morris, Goldy, and Fackrell, as well as another

19  correctional officer, all ordered plaintiff to get down.  (Mendoza Decl., Exs. A-E.)  Plaintiff did

20  not comply with the orders.  (Mendoza Decl., Exs. A, B and E.)  Defendants Goldy, Fackrell and

21  Morris therefore forced plaintiff to the ground.  (Mendoza Decl., Exs. A-C.)  While on the

22  ground, plaintiff started kicking at defendant Morris.  (Mendoza Decl., Ex. C.)  Defendant Head

23  grabbed plaintiff's legs, criss-crossed them, and bent them at the knees toward plaintiff's

24  buttocks.  (Id.)  Defendant Head yelled at plaintiff to stop kicking.  (Id.)  When plaintiff did so,

25  defendant Gutierrez placed leg restraints on him and relieved defendant Goldy.  (Mendoza Decl.,

26  Exs. A and C.)  Defendant Leone arrived and relieved defendant Morris of his position.

1  (Mendoza Decl., Ex. B.)  Two nurses placed a bandage on plaintiff's head, and defendants

2  Gutierrez and Leone then escorted plaintiff to the Program Office and placed him in a holding

3  cell.  (Id.)  Plaintiff had a bump and an abrasion on the right side of his head, a 1.5 cm long

4  laceration above his right eye, abrasions on his nose, high on the front of his left thigh, and the

5  front of each of his knees, and reddening on both wrists due to the handcuffs.  (Mendoza Decl.,

6  Ex. O.)

7              In opposition to the motion, plaintiff has presented evidence, in the form of a

8  declaration from a fellow inmate, that he was attacked by defendants Morris, Goldy, Leone and

9  Fackrell while attempting to sit down and was handcuffed with his hands behind his back, that

10  defendants Morris and Goldy pulled his arms in two different directions and defendant Fackrell

11  jumped on top of him "slamming his face into the asphalt extremely hard."  (Moreno Decl.)

12  Plaintiff also avers in his opposition, which is signed under penalty of perjury, that on September

13  15, 2009, defendants Fackrell and Gamberg threatened to have him murdered, with defendant

14  Fackrell making a verbal threat in that regard and defendant Gamberg doing so "via body

15  language."  (Pl's Opp'n filed August 24, 2011 (Doc. No. 59), at 2.)  Plaintiff avers that defendant

16  Fackrell and the other defendants attacked him after defendant Fackrell was notified by defendant

17  Gutierrez that plaintiff asked to bring criminal charges against defendants Fackrell and Gamberg

18  because of the alleged threat.  (Id. at 3.)  Plaintiff also avers that defendants Light, Morris, and

19  Goldy were all present when he told defendant Gutierrez that he wanted to file criminal charges

20  against defendants Fackrell and Gamberg and requested to be placed in protective custody.  (Id.

21  at 4-5.)

22              DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

23              Defendants Fackrell, Goldy, Morris, Leone and Head all seek summary judgment

24  in their favor on plaintiff's Eighth Amendment claim of excessive use of force on the ground that

25  there is no evidence that they subjected plaintiff to excessive force.  Defendants Gutierrez, Light,

26  Morris and Goldy all seek summary judgment in their favor on plaintiff's Eighth Amendment

1   claim of failing to protect him on the ground that there is no evidence to support that claim.

2   Defendants Gamberg, Gutierrez and McGuire seek summary judgment in their favor on

3   plaintiff's claim of interference with access to the courts on the ground that there is no evidence

4   to support that claim.  Defendants also contend that they are entitled to summary judgment

5   because a judgment in plaintiff's favor would call into question the validity of the prison

6   disciplinary conviction sustained by plaintiff as well as his criminal conviction.  Finally,

7   defendants contend that they are entitled to summary judgment on qualified immunity grounds.

8   I.  Excessive Force

9           "When prison officials use excessive force against prisoners, they violate the

10  inmates' Eighth Amendment right to be free from cruel and unusual punishment."  Clement v.

11  Gomez, 298 F.3d 898, 903 (9th Cir.2002).  "Force does not amount to a constitutional violation

12  in this respect if it is applied in a good faith effort to restore discipline and order and not

13  'maliciously and sadistically for the very purpose of causing harm.'"  Id. (quoting Whitley v.

14  Albers, 475 U.S. 312, 320-21 (1986)).

> Under the Whitley approach, the extent of injury suffered by an
> inmate is one factor that may suggest "whether the use of force
> could plausibly have been thought necessary" in a particular
> situation, "or instead evinced such wantonness with respect to the
> unjustified infliction of harm as is tantamount to a knowing
> willingness that it occur." 475 U.S., at 321, 106 S. Ct., at 1085. In
> determining whether the use of force was wanton and unnecessary,
> it may also be proper to evaluate the need for application of force,
> the relationship between that need and the amount of force used,
> the threat "reasonably perceived by the responsible officials," and
> "any efforts made to temper the severity of a forceful response."
> Ibid.

22  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  The United States Supreme Court has recently

23  reiterated that the Eighth Amendment may be violated by use of excessive force against a prison

24  inmate "'[even] when the inmate does not suffer serious injury.'"  Wilkins v. Gaddy, __ U.S. __,

25  __, 130 S. Ct. 1175, 1176 (2010) (quoting Hudson, 503 U.S. at 4).  While the extent of an

26  /////

1  inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force . . . are only

2  imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 130 S. Ct. at 1178.

3                  In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court

4            mandated a two-step sequence for resolving government officials'
             qualified immunity claims. First, a court must decide whether the

5            facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6),
             (c)) or shown (see Rules 50, 56) make out a violation of a

6            constitutional right. 533 U.S., at 201, 121 S. Ct. 2151. Second, if
             the plaintiff has satisfied this first step, the court must decide

7            whether the right at issue was "clearly established" at the time of
             defendant's alleged misconduct. Ibid. Qualified immunity is

8            applicable unless the official's conduct violated a clearly
             established constitutional right.

9

10  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Anderson v. Creighton, 483 U.S. 635, 640

11  (1987)). "'For a constitutional right to be clearly established, its contours must be sufficiently

12  clear that a reasonable official would understand that what he is doing violates that right.  This is

13  not to say that an official action is protected by qualified immunity unless the very action in

14  question has previously been held unlawful, see Mitchell [v. Forsyth, 472 U.S. 511,] 535, n. 12,

15  105 S. Ct. 2806, 86 L. Ed.2d 411; but it is to say that in the light of pre-existing law the

16  unlawfulness must be apparent.'"  Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson,

17  id.).

18                  In Pearson, the United States Supreme Court held that the two step analysis of

19  Saucier is no longer mandatory.  Instead, "[t]he judges of the district courts and the courts of

20  appeals should be permitted to exercise their sound discretion in deciding which of the two

21  prongs of the qualified immunity analysis should be addressed first in light of the circumstances

22  in the particular case at hand."  555 U.S. at 236.  Thus, courts now have the discretion to "skip

23  the first step of the Saucier analysis and proceed directly to the qualified immunity question."

24  Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

25                  Defendants Fackrell, Goldy, Morris and Head seek summary judgment in their

26  favor on the grounds that (1) the extent of plaintiff's injuries is consistent with a reasonable use

of force under the circumstances; (2) the evidence shows a "high need for the application of force"; (3) the evidence of the relationship between the need for force and the amount used also shows no excessive force; (4) the evidence shows that the officers reasonably perceived a high threat; and (5) the evidence shows that efforts were made to temper the severity of the response. (Mot. for Summ. J. (Doc. No. 52) at 8-9.)  Defendant Leone seeks summary judgment on the ground that there is no evidence that he used any force against plaintiff.  Specifically, defendant Leone contends that the evidence shows only that he merely relieved defendant Morris by placing his hands on plaintiff's back and left arm, and that he helped plaintiff up after medical staff had examined plaintiff.  In support of their motion for summary, defendants present, inter alia, three incident reports prepared by correctional staff which present a consistent description of the events underlying this action.  (See Mendoza Decl., Exs. E-G.)

　　　　　　The only evidence in the record that raises any question about the evidence tendered by defendants Leone is a declaration from another inmate, presented by plaintiff, who avers that he witnessed the incident and states,

> it appeared as if inmate Bowell was attempting to sit down, when all of a sudden C/O Goldy yanked I/M Bowell in one direction while C/O Morris pulled I/M Bowell in the opposite direction and then Sgt. C. Fackrell jumped on top of I/M Bowell slamming his face into the asphalt extremely hard.

(Pl's Opp'n, Ex. A - Declaration of Witness Inmate Moreno.)  Inmate Moreno also avers that the officers "attacked [plaintiff] while he was handcuffed behind his back."  (Id.)  In addition, in his amended complaint signed under penalty of perjury[3], plaintiff alleges that he was "attacked via Sgt. C. Fackrell from behind hitting the asphalt face first extremely hard, and that while he was lying on asphalt "with sharp rocks protruding" his face was turned left and defendants Goldy, Morris, Leone, Head and Fackrell  applied their body weight on top of plaintiff, particularly his

---

[3]  An amended complaint, signed under penalty of perjury, can serve as an affidavit in opposition to summary judgment to the extent the facts pleaded therein are based on personal knowledge and otherwise admissible.  See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

1   head, and pulled his feet "approximately one or two feet, as if at a rodeo roping a calf, scraping

2   the left side of [plaintiff]'s face for approximately five minutes leaving approximately a ten inch

3   circle of [plaintiff]'s blood on the asphalt."  (Am. Compl. at 6-7.)

4          Even assuming arguendo that this evidence presented by plaintiff might be

5   sufficient to create a triable issue of material fact as to whether defendant Leone applied force to

6   plaintiff "maliciously and sadistically for the very purpose of causing harm," the court must

7   separate the qualified immunity inquiry from the constitutional inquiry and "look at the situation

8   as a reasonable officer in [the position of any of the defendants] could have perceived it."

9   Marquez v. Gutierrez, 332 F.3d 689, 693 (9th Cir. 2003).

10          It is undisputed that plaintiff attempted to sit down while he was being escorted to

11  the program office.  Moreover, plaintiff has presented no evidence to dispute defendants'

12  evidence that he attempted to pull defendant Goldy to the ground with him when he attempted to

13  sit down, nor has he presented any evidence to dispute defendants' evidence that he failed to

14  comply with orders from defendants Morris, Goldy and Fackrell to get down.  It is also

15  undisputed that the entire series of events took place over a five minute period.  This court finds

16  that reasonable correctional officers in the position that defendants Morris, Goldy, Fackrell, Head

17  and Leone found themselves could have believed that the force used to control plaintiff and get

18  him in leg restraints was applied in a "good faith effort to restore discipline and order."  Whitley,

19  475 U.S. at 320-21.  See also Hudson, 503 U.S. at 7; Luchtel v. Hagemann, 623 F.3d 975, 983 n.

20  3 (9th Cir. 2010) ("A reasonable police officer in the position of the defendants had to act to

21  restrain Luchtel, to protect her from herself and to protect themselves and others. The degree of

22  force used was not excessive in light of her fighting the restraint, and the mere fact of consequent

23  injury is not enough to establish excessive force."); Marquez v. Gutierrez, 322 F.3d 689, 693 (9th

24  Cir. 2003) ("[W]e believe that a reasonable officer could believe that shooting one inmate in the

25  leg to stop an assault that could have seriously injured or killed another inmate was a good faith

26  effort to restore order, and thus lawful.")  Accordingly, this court finds that defendants Morris,

1   Goldy, Fackrell, Head and Leone are entitled to summary judgment in their favor with respect to

2   plaintiff's excessive use of force claim on the grounds of qualified immunity.

3   II.   Failure to Protect

4              Plaintiff also claims that defendants Gutierrez, Light, Morris and Goldy violated

5   his rights under the Eighth Amendment by failing to protect him from the harm threatened by

6   defendant Fackrell.  Defendants Gutierrez, Light, Morris and Goldy seek summary judgment in

7   their favor on this claim, arguing that there is no evidence before the court suggesting that plaintiff

8   was incarcerated under conditions that posed to him a substantial risk of harm and no evidence

9   that these defendants were deliberately indifferent to plaintiff's safety.  Specifically, defendants

10  contend that plaintiff's behavior, not Fackrell's, provoked the use of force in connection with this

11  incident.  Defendants also contend that they are entitled to summary judgment on qualified

12  immunity grounds.

13             In order to prevail on his Eighth Amendment failure to protect claim plaintiff must

14  present evidence that he was faced with a substantial risk of serious harm from defendant

15  Fackrell, and that defendants Gutierrez, Light, Morris and Goldy acted with deliberate

16  indifference to that risk.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate

17  indifference is proved by evidence that a prison official "knows of and disregards an excessive

18  risk to inmate health or safety; the official must both be aware of the facts from which the

19  inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

20  inference." Farmer v. Brennan, 511 U.S. at 837.

21             The only evidence submitted by plaintiff in support of this claim is his own

22  allegation in his verified complaint that shortly before the use of force incident on September 15,

23  2009, plaintiff had told defendants Gutierrez, Light, Morris and Goldy that defendant Fackrell had

24  threatened to murder him and defendant Gamberg had made threatening facial expressions and

25  /////

26  /////

11

1  gestures and, as a result, plaintiff requested that they place him in protective custody.[4]  Shortly

2  thereafter, according to plaintiff, the use of force incident described above occurred.

3         The evidence submitted by plaintiff is insufficient to create a triable issue of

4  material fact as to whether defendants Gutierrez, Light, Morris or Goldy were deliberately

5  indifferent to a substantial risk of harm posed to plaintiff.  Even crediting plaintiff's evidence

6  concerning his alleged conversation with defendants Gutierrez, Light, Morris and Goldy, as the

7  court must on this motion for summary judgment, there is simply no evidence that defendants

8  Gutierrez, Light, Morris or Goldy responded to that conversation with deliberate indifference.

9  The evidence establishes that plaintiff was being escorted by correctional officers to the program

10  office.  Again, plaintiff concedes that he resisted the officers during that escort, in part by

11  attempting to sit down.  Only thereafter was any force applied by defendant Fackrell or anyone

12  else.  Therefore these defendants are entitled to summary judgment with respect to plaintiff's

13  claim that they failed to protect him from a known risk of harm.

14  III.  <u>Interference with Access to the Courts</u>

15         Plaintiff claims that defendants Gamberg, Gutierrez and McGuire violated his

16  constitutional right to access the courts when, on September 15, 2009, defendant Gamberg told

17  defendants Gutierrez and McGuire to "lose" a supplemental reply brief that plaintiff had prepared

18  in response to a brief filed in the California Court of Appeal for the Second Appellate District,

19  Division One in Case B216384 and that he intended to file in the United States Court of Appeals

20  for the Ninth Circuit (Ninth Circuit) in Case No. 09-74076.  (Am. Compl. at 10-11.)  Plaintiff

21  contends that due to the loss of this supplemental reply brief, the Ninth Circuit Court of Appeals

22  denied his request for leave to file a second or successive habeas corpus petition.

23  /////

24

---

25  [4]  Plaintiff makes substantially the same averments in his response to defendants' reply brief, which is also signed under penalty of perjury.  (<u>See</u> Pl's Opp'n to Defs.' Mot. for Summ. J.

26  (Doc. No. 62) at 6-7.)  However, this pleading submitted by plaintiff is not authorized by the Federal Rules of Civil Procedure or the Local Rules of Court.

1    Defendant Gamberg seeks summary judgment in his favor on this claim on the

2  ground that the evidence submitted to the court shows that he gave the envelope to defendant

3  Morris to return to plaintiff, which defendant Morris did.  Defendant McGuire seeks summary

4  judgment in his favor on the claim on the ground that he was not present or involved in any way

5  when the envelope was returned to plaintiff and then given by plaintiff to defendant Gutierrez.

6  Finally, defendant Gutierrez seeks summary judgment in his favor on the ground that the evidence

7  before the court establishes that plaintiff gave her the envelope and asked her to put it with his

8  legal property, and that she complied with this request.  Defendant Gutierrez contends that

9  plaintiff's claim that defendant Gutierrez hid the envelope for six months is "pure conjecture and

10  speculation unsupported by the evidence."  (Mem. of P. & A. in Supp. of Mot. for Summ. J. (Doc.

11  No. 52) at 13.)

12    The United States Supreme Court has held that prison inmates have a

13  constitutionally protected right to access the courts to bring civil rights actions challenging the

14  conditions of their confinement and to bring challenges to their criminal convictions.  In Lewis v.

15  Casey, 518 U.S. 343, 351 (1996).  The right of access to the courts "guarantees no particular

16  methodology but rather the conferral of a capability -- the capability of bringing contemplated

17  challenges to sentences or conditions of confinement before the courts."  Id. at 356.  To prevent

18  summary judgment for defendants on such a claim, plaintiff must present evidence, sufficient to

19  create a genuine issue of material fact, that defendants by their acts prevented him from bringing,

20  or caused him to lose, an actionable claim of this type.  Id.

21    Here, plaintiff has filed to meet his burden.  He has not come forward with any

22  evidence establishing that any alleged act or omission by defendants Gamberg, McGuire, or

23  Gutierrez either prevented him from bringing, or causing him to lose, an actionable challenge to

24  his criminal conviction or a civil action challenging the conditions of his confinement.  Merely

25  claiming that he was unable to file a supplemental reply brief in the state appellate court fails to so

26  /////

13

1    establish.  Defendants Gamberg, McGuire, and Gutierrez are therefore entitled to summary

2    judgment on this claim as well.

                                    CONCLUSION

3

4            For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants'

5    August 5, 2011 motion for summary judgment be granted.

6            These findings and recommendations are submitted to the United States District

7    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

8    days after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

11   objections shall be filed and served within fourteen days after service of the objections.  The

12   parties are advised that failure to file objections within the specified time may waive the right to

13   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14   DATED: February 21, 2012.

15

16   _____

17   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

18

19

20   DAD:12
     bowe0397.msj

21

22

23

24

25

26

                                           14