IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES E. BOWELL,

    Plaintiff,                    No. 2:10-cv-0397 JAM DAD (PC)

    vs.

CALIFORNIA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.                FINDINGS AND RECOMMENDATIONS

    Plaintiff is a state prisoner proceeding pro se in this civil rights action for relief pursuant to 42 U.S.C. § 1983. This action is proceeding on claims raised in plaintiff's amended complaint, filed June 14, 2010. (Doc. No. 16.) Therein plaintiff presents the following claims: (1) that on September 15, 2009, defendants Fackrell, Goldy, Morris, Leone, and Head violated plaintiff's Eighth Amendment rights by use of excessive force (Doc. No. 16 at 6-7); (2) that defendants Gutierrez, Light, Morris and Goldy violated plaintiff's rights under the Eighth Amendment by failing to protect him from harm threatened by defendant Fackrell (id. at 7-8); and (3) that defendants Gamberg, Gutierrez, and McGuire violated plaintiff's First Amendment

/////

/////

/////

1

right to access the courts (id. at 10-11).[1]  This matter is before the court on defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff opposes the motion.[2]

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as

/////

---

[1] The court has separately recommended dismissal of plaintiff's claim that on December 3, 2009, defendant T. Smith subjected plaintiff to the excessive use of force and threatened to have him murdered.  See Findings and Recommendations filed December 13, 2011 (Doc. No. 63). Defendant Smith also seeks summary judgment by the motion at bar.  In view of the December 13, 2011 findings and recommendations, the court will not address defendant Smith's motion for summary judgment herein.

[2] To the extent that plaintiff's opposition might be construed as a request pursuant to Federal Rule of Civil Procedure 56(d) to postpone consideration of defendants' motion, the request should be denied due to plaintiff's failure to make a sufficient showing to warrant such a postponement.

whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

3

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On November 3, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I.  Facts

The following facts are undisputed.  At all times relevant to this action plaintiff was an inmate confined at High Desert State Prison (High Desert), and defendants Fackrell, Goldy, Morris, Leone, Head Gutierrez, Light, Gamberg, and McGuire were employees of the California Department of Corrections and Rehabilitation (CDCR) working at High Desert.

On September 15, 2009, plaintiff was being escorted by defendants Morris and Goldy to the facility B program office at High Desert.  (Opp'n. (Doc. No. 59), Ex. A - Decl. of Witness Inmate Moreno filed August 24, 2011 (Moreno Decl.); Mot. for Summ. J. (Doc. No. 52), Exs. A and B to Declaration of Mendoza filed August 5, 2011 (Mendoza Decl.)).  During the escort, plaintiff attempted to sit down.  (Moreno Decl.; Mendoza Decl., Ex. A.)  An altercation ensued involving plaintiff and defendants Morris, Goldy, Mendoza, Fackrell.  (Id.)  At some point, defendants Leone, Head and Gutierrez all arrived at the scene of the altercation.  (Mendoza Decl., Ex. A.)

4

1    As a result of the altercation, plaintiff was charged with a disciplinary violation of
2 battery on a peace officer.  (Mendoza Decl., Ex. I.)  Plaintiff was found guilty of the charges
3 following a disciplinary hearing that he refused to attend.  (Mendoza Decl., Ex. K.)
4    Just before the altercation, defendant Gamberg gave an envelope containing some
5 of plaintiff's legal documents to defendant Morris.  (Decl. of Matthew Ross Wilson (Wilson
6 Decl.) in Supp. of Mot. for Summ. J. (Doc. No. 53), Ex. A - Dep. of James Bowell (Bowell Dep.)
7 at 57:15-18.)  Defendant Morris returned the documents to plaintiff, who then gave the
8 documents to defendant Gutierrez.  (Bowell Dep. at 58:8-10.)  Defendant Gutierrez placed the
9 documents on the floor of the dayroom.  (Id. at 58:17-21.)  The documents were not in plaintiff's
10 property when it was returned to him by prison officials six weeks later.  (Id. at 77:16-24.)
11 Plaintiff did not receive the documents back until he left High Desert approximately six weeks
12 later.  (Id. at 77:24.)
13    Several facts relevant to plaintiff's claims concerning the altercation with the
14 defendants and their alleged failure to protect plaintiff from the alleged threat by defendant
15 Fackrell are in dispute.  In support of their motion for summary judgment, defendants present
16 evidence that plaintiff attempted to pull defendant Goldy to the ground with him when plaintiff
17 attempted to sit down.  (Mendoza Decl. , Exs. A and B.)  Defendant Morris ordered plaintiff to
18 let go of defendant Goldy's arm, and defendants Morris, Goldy, and Fackrell, as well as another
19 correctional officer, all ordered plaintiff to get down.  (Mendoza Decl., Exs. A-E.)  Plaintiff did
20 not comply with the orders.  (Mendoza Decl., Exs. A, B and E.)  Defendants Goldy, Fackrell and
21 Morris therefore forced plaintiff to the ground.  (Mendoza Decl., Exs. A-C.)  While on the
22 ground, plaintiff started kicking at defendant Morris.  (Mendoza Decl., Ex. C.)  Defendant Head
23 grabbed plaintiff's legs, criss-crossed them, and bent them at the knees toward plaintiff's
24 buttocks.  (Id.)  Defendant Head yelled at plaintiff to stop kicking.  (Id.)  When plaintiff did so,
25 defendant Gutierrez placed leg restraints on him and relieved defendant Goldy.  (Mendoza Decl.,
26 Exs. A and C.)  Defendant Leone arrived and relieved defendant Morris of his position.

(Mendoza Decl., Ex. B.) Two nurses placed a bandage on plaintiff's head, and defendants Gutierrez and Leone then escorted plaintiff to the Program Office and placed him in a holding cell. (Id.) Plaintiff had a bump and an abrasion on the right side of his head, a 1.5 cm long laceration above his right eye, abrasions on his nose, high on the front of his left thigh, and the front of each of his knees, and reddening on both wrists due to the handcuffs. (Mendoza Decl., Ex. O.)

In opposition to the motion, plaintiff has presented evidence, in the form of a declaration from a fellow inmate, that he was attacked by defendants Morris, Goldy, Leone and Fackrell while attempting to sit down and was handcuffed with his hands behind his back, that defendants Morris and Goldy pulled his arms in two different directions and defendant Fackrell jumped on top of him "slamming his face into the asphalt extremely hard." (Moreno Decl.) Plaintiff also avers in his opposition, which is signed under penalty of perjury, that on September 15, 2009, defendants Fackrell and Gamberg threatened to have him murdered, with defendant Fackrell making a verbal threat in that regard and defendant Gamberg doing so "via body language." (Pl's Opp'n filed August 24, 2011 (Doc. No. 59), at 2.) Plaintiff avers that defendant Fackrell and the other defendants attacked him after defendant Fackrell was notified by defendant Gutierrez that plaintiff asked to bring criminal charges against defendants Fackrell and Gamberg because of the alleged threat. (Id. at 3.) Plaintiff also avers that defendants Light, Morris, and Goldy were all present when he told defendant Gutierrez that he wanted to file criminal charges against defendants Fackrell and Gamberg and requested to be placed in protective custody. (Id. at 4-5.)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Fackrell, Goldy, Morris, Leone and Head all seek summary judgment in their favor on plaintiff's Eighth Amendment claim of excessive use of force on the ground that there is no evidence that they subjected plaintiff to excessive force. Defendants Gutierrez, Light, Morris and Goldy all seek summary judgment in their favor on plaintiff's Eighth Amendment

claim of failing to protect him on the ground that there is no evidence to support that claim. Defendants Gamberg, Gutierrez and McGuire seek summary judgment in their favor on plaintiff's claim of interference with access to the courts on the ground that there is no evidence to support that claim. Defendants also contend that they are entitled to summary judgment because a judgment in plaintiff's favor would call into question the validity of the prison disciplinary conviction sustained by plaintiff as well as his criminal conviction. Finally, defendants contend that they are entitled to summary judgment on qualified immunity grounds.

I. Excessive Force

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir.2002). "Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

> Under the Whitley approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." 475 U.S., at 321, 106 S. Ct., at 1085. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." Ibid.

Hudson v. McMillian, 503 U.S. 1, 7 (1992). The United States Supreme Court has recently reiterated that the Eighth Amendment may be violated by use of excessive force against a prison inmate "'[even] when the inmate does not suffer serious injury.'" Wilkins v. Gaddy, _ U.S. _, _, 130 S. Ct. 1175, 1176 (2010) (quoting Hudson, 503 U.S. at 4). While the extent of an

/////

7

inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 130 S. Ct. at 1178.

> In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court
>
> mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S. Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Ibid*. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "'For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. Forsyth, 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L. Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson, id.).

In Pearson, the United States Supreme Court held that the two step analysis of Saucier is no longer mandatory. Instead, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236. Thus, courts now have the discretion to "skip the first step of the Saucier analysis and proceed directly to the qualified immunity question." Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

Defendants Fackrell, Goldy, Morris and Head seek summary judgment in their favor on the grounds that (1) the extent of plaintiff's injuries is consistent with a reasonable use

of force under the circumstances; (2) the evidence shows a "high need for the application of force"; (3) the evidence of the relationship between the need for force and the amount used also shows no excessive force; (4) the evidence shows that the officers reasonably perceived a high threat; and (5) the evidence shows that efforts were made to temper the severity of the response. (Mot. for Summ. J. (Doc. No. 52) at 8-9.) Defendant Leone seeks summary judgment on the ground that there is no evidence that he used any force against plaintiff. Specifically, defendant Leone contends that the evidence shows only that he merely relieved defendant Morris by placing his hands on plaintiff's back and left arm, and that he helped plaintiff up after medical staff had examined plaintiff. In support of their motion for summary, defendants present, inter alia, three incident reports prepared by correctional staff which present a consistent description of the events underlying this action. (See Mendoza Decl., Exs. E-G.)

The only evidence in the record that raises any question about the evidence tendered by defendants Leone is a declaration from another inmate, presented by plaintiff, who avers that he witnessed the incident and states,

> it appeared as if inmate Bowell was attempting to sit down, when all of a sudden C/O Goldy yanked I/M Bowell in one direction while C/O Morris pulled I/M Bowell in the opposite direction and then Sgt. C. Fackrell jumped on top of I/M Bowell slamming his face into the asphalt extremely hard.

(Pl's Opp'n, Ex. A - Declaration of Witness Inmate Moreno.) Inmate Moreno also avers that the officers "attacked [plaintiff] while he was handcuffed behind his back." (Id.) In addition, in his amended complaint signed under penalty of perjury[3], plaintiff alleges that he was "attacked via Sgt. C. Fackrell from behind hitting the asphalt face first extremely hard, and that while he was lying on asphalt "with sharp rocks protruding" his face was turned left and defendants Goldy, Morris, Leone, Head and Fackrell applied their body weight on top of plaintiff, particularly his

---

[3] An amended complaint, signed under penalty of perjury, can serve as an affidavit in opposition to summary judgment to the extent the facts pleaded therein are based on personal knowledge and otherwise admissible. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

head, and pulled his feet "approximately one or two feet, as if at a rodeo roping a calf, scraping the left side of [plaintiff]'s face for approximately five minutes leaving approximately a ten inch circle of [plaintiff]'s blood on the asphalt." (Am. Compl. at 6-7.)

Even assuming arguendo that this evidence presented by plaintiff might be sufficient to create a triable issue of material fact as to whether defendant Leone applied force to plaintiff "maliciously and sadistically for the very purpose of causing harm," the court must separate the qualified immunity inquiry from the constitutional inquiry and "look at the situation as a reasonable officer in [the position of any of the defendants] could have perceived it." Marquez v. Gutierrez, 332 F.3d 689, 693 (9th Cir. 2003).

It is undisputed that plaintiff attempted to sit down while he was being escorted to the program office. Moreover, plaintiff has presented no evidence to dispute defendants' evidence that he attempted to pull defendant Goldy to the ground with him when he attempted to sit down, nor has he presented any evidence to dispute defendants' evidence that he failed to comply with orders from defendants Morris, Goldy and Fackrell to get down. It is also undisputed that the entire series of events took place over a five minute period. This court finds that reasonable correctional officers in the position that defendants Morris, Goldy, Fackrell, Head and Leone found themselves could have believed that the force used to control plaintiff and get him in leg restraints was applied in a "good faith effort to restore discipline and order." Whitley, 475 U.S. at 320-21. See also Hudson, 503 U.S. at 7; Luchtel v. Hagemann, 623 F.3d 975, 983 n. 3 (9th Cir. 2010) ("A reasonable police officer in the position of the defendants had to act to restrain Luchtel, to protect her from herself and to protect themselves and others. The degree of force used was not excessive in light of her fighting the restraint, and the mere fact of consequent injury is not enough to establish excessive force."); Marquez v. Gutierrez, 322 F.3d 689, 693 (9th Cir. 2003) ("[W]e believe that a reasonable officer could believe that shooting one inmate in the leg to stop an assault that could have seriously injured or killed another inmate was a good faith effort to restore order, and thus lawful.") Accordingly, this court finds that defendants Morris,

Goldy, Fackrell, Head and Leone are entitled to summary judgment in their favor with respect to plaintiff's excessive use of force claim on the grounds of qualified immunity.

II. <u>Failure to Protect</u>

Plaintiff also claims that defendants Gutierrez, Light, Morris and Goldy violated his rights under the Eighth Amendment by failing to protect him from the harm threatened by defendant Fackrell.  Defendants Gutierrez, Light, Morris and Goldy seek summary judgment in their favor on this claim, arguing that there is no evidence before the court suggesting that plaintiff was incarcerated under conditions that posed to him a substantial risk of harm and no evidence that these defendants were deliberately indifferent to plaintiff's safety.  Specifically, defendants contend that plaintiff's behavior, not Fackrell's, provoked the use of force in connection with this incident.  Defendants also contend that they are entitled to summary judgment on qualified immunity grounds.

In order to prevail on his Eighth Amendment failure to protect claim plaintiff must present evidence that he was faced with a substantial risk of serious harm from defendant Fackrell, and that defendants Gutierrez, Light, Morris and Goldy acted with deliberate indifference to that risk.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. at 837.

The only evidence submitted by plaintiff in support of this claim is his own allegation in his verified complaint that shortly before the use of force incident on September 15, 2009, plaintiff had told defendants Gutierrez, Light, Morris and Goldy that defendant Fackrell had threatened to murder him and defendant Gamberg had made threatening facial expressions and

/////

/////

gestures and, as a result, plaintiff requested that they place him in protective custody.[4]  Shortly thereafter, according to plaintiff, the use of force incident described above occurred.

The evidence submitted by plaintiff is insufficient to create a triable issue of material fact as to whether defendants Gutierrez, Light, Morris or Goldy were deliberately indifferent to a substantial risk of harm posed to plaintiff.  Even crediting plaintiff's evidence concerning his alleged conversation with defendants Gutierrez, Light, Morris and Goldy, as the court must on this motion for summary judgment, there is simply no evidence that defendants Gutierrez, Light, Morris or Goldy responded to that conversation with deliberate indifference.  The evidence establishes that plaintiff was being escorted by correctional officers to the program office.  Again, plaintiff concedes that he resisted the officers during that escort, in part by attempting to sit down.  Only thereafter was any force applied by defendant Fackrell or anyone else.  Therefore these defendants are entitled to summary judgment with respect to plaintiff's claim that they failed to protect him from a known risk of harm.

III.  Interference with Access to the Courts

Plaintiff claims that defendants Gamberg, Gutierrez and McGuire violated his constitutional right to access the courts when, on September 15, 2009, defendant Gamberg told defendants Gutierrez and McGuire to "lose" a supplemental reply brief that plaintiff had prepared in response to a brief filed in the California Court of Appeal for the Second Appellate District, Division One in Case B216384 and that he intended to file in the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) in Case No. 09-74076.  (Am. Compl. at 10-11.)  Plaintiff contends that due to the loss of this supplemental reply brief, the Ninth Circuit Court of Appeals denied his request for leave to file a second or successive habeas corpus petition.

/////

---

[4] Plaintiff makes substantially the same averments in his response to defendants' reply brief, which is also signed under penalty of perjury.  (See Pl's Opp'n to Defs.' Mot. for Summ. J. (Doc. No. 62) at 6-7.)  However, this pleading submitted by plaintiff is not authorized by the Federal Rules of Civil Procedure or the Local Rules of Court.

Defendant Gamberg seeks summary judgment in his favor on this claim on the ground that the evidence submitted to the court shows that he gave the envelope to defendant Morris to return to plaintiff, which defendant Morris did. Defendant McGuire seeks summary judgment in his favor on the claim on the ground that he was not present or involved in any way when the envelope was returned to plaintiff and then given by plaintiff to defendant Gutierrez. Finally, defendant Gutierrez seeks summary judgment in his favor on the ground that the evidence before the court establishes that plaintiff gave her the envelope and asked her to put it with his legal property, and that she complied with this request. Defendant Gutierrez contends that plaintiff's claim that defendant Gutierrez hid the envelope for six months is "pure conjecture and speculation unsupported by the evidence." (Mem. of P. & A. in Supp. of Mot. for Summ. J. (Doc. No. 52) at 13.)

The United States Supreme Court has held that prison inmates have a constitutionally protected right to access the courts to bring civil rights actions challenging the conditions of their confinement and to bring challenges to their criminal convictions. In Lewis v. Casey, 518 U.S. 343, 351 (1996). The right of access to the courts "guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. at 356. To prevent summary judgment for defendants on such a claim, plaintiff must present evidence, sufficient to create a genuine issue of material fact, that defendants by their acts prevented him from bringing, or caused him to lose, an actionable claim of this type. Id.

Here, plaintiff has filed to meet his burden. He has not come forward with any evidence establishing that any alleged act or omission by defendants Gamberg, McGuire, or Gutierrez either prevented him from bringing, or causing him to lose, an actionable challenge to his criminal conviction or a civil action challenging the conditions of his confinement. Merely claiming that he was unable to file a supplemental reply brief in the state appellate court fails to so

/////

establish. Defendants Gamberg, McGuire, and Gutierrez are therefore entitled to summary judgment on this claim as well.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' August 5, 2011 motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 21, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
bowe0397.msj